Morris *v.* Crossett Lumber Company.

4-9588                                           243 S. W. 2d 764

Opinion delivered November 19, 1951.

Rehearing denied December 17, 1951.

*Ovid T. Switzer* and *W. P. Switzer,* for appellant.

*Williamson & Williamson* and *W. H. Howard,* for appellee.

Holt, J.   Appellant's claim arises under the Workmen's Compensation Act, 319 of 1939.

Appellant's husband, Claude Morris, on August 12, 1948, received an injury to his right eye (resulting in its loss) while employed by appellee and in the course of such employment. He died January 22, 1949. The Workmen's Compensation Commission denied appellant's claim for a compensation award and the Ashley Circuit Court, on appeal, affirmed.

Appellant's attorney says: ''The contention of the claimant is that Claude Morris died as a result of the injury that he received on August 12, 1948, or as a result of a weakness of the heart caused by the injury.''

Appellee's attorney stated its defense: ''The contention of the respondent is he did not die by anything

arising out of and in the course of his employment. That gives you a clear cut issue."

Following a hearing, the full Commission summed up its conclusions, after hearing much testimony, as follows: "There seems to be no dispute as to the decedent's August 12, 1948, injury and ensuing disability nor that he lost the sight of his right eye as a result of that injury. It also seems clear that the decedent's widow was his only dependent. The doctor who first saw the claimant after his death was of the opinion he possibly died from coronary occlusions but he was not certain. According to the testimony, it is difficult and practically impossible to show with certainty the exact cause of decedent's death without an autopsy and none was performed. The testimony is to the effect that prior to August 12, 1948, the decedent worked regularly, was an efficient workman and was apparently in good health and had an excellent disposition; that after the injury in August, 1948, the decedent constantly complained of severe headaches and with his legs hurting. It also appears that the decedent was not in the same condition after his injury as he had been for a period of several years prior thereto.

"The only doctor who actually saw and examined the decedent after his death was Dr. M. E. McMillan, who was of the opinion the decedent died from a coronary occlusion which had no connection with the decedent's injury on August 12, 1948.

"It was the opinion of Dr. A. Scott Hamilton at the first hearing in May, 1949, and again in October, 1949, that the decedent's injury on August 12, 1948, was a contributory cause in the death of the decedent on January 22, 1949.

"Dr. Gardner H. Landers, Dr. L. G. Fincher, Dr. A. W. Norris, Dr. E. Lloyd Wilbur, Dr. J. N. Compton and Dr. Robert Watson were all of the opinion that there was no causal connection between the decedent's August, 1948, injury and his death in January, 1949. Dr. Raymond C. Cook found no injury except to the decedent's right eye and it was his opinion there had been no perforation to the right eye.

"It has been the contention of the claimant in this case that the decedent's death resulted from his injury on August 12, 1948; however, it is argued in the brief filed by the claimant's attorney after the hearing before the full Commission that the decedent's work, after returning to work for this employer on January 3, 1949, contributed to his death. In this connection, we are of the opinion that the claimant has failed to discharge the burden that is upon her to show that the decedent's death resulted from an accidental injury which arose out of his employment.

"As to the contention of the claimant that the death of the decedent resulted from his accidental injury of August 12, 1948, it appears we are dealing in probabilities. The question itself seems then to resolve itself down as to what were the most reasonable probabilities in this case. After a careful consideration of all the evidence, we are of the opinion that by far the greater weight of evidence in this case is that the decedent's death on January 22, 1949, had no causal connection between his injury on August 12, 1948. The claimant's claim for compensation as a result of the death of the decedent, therefore, is denied and dismissed."

On appeal here, our duty, as many times announced, is to determine whether there is substantial evidence to support the Commission's findings.

After a review of all of the testimony, much of which is in conflict, we are unable to say that there was no substantial evidence to support the Commission's denial of the claim. As we recently said in *H. C. Price Construction Company* v. *Southern*, 216 Ark. 113, 224 S. W. 2d 358: "The testimony cannot be reconciled. It is not, however, the function of the courts to weigh the evidence in compensation cases. *J. L. Williams & Sons, Inc.*, v. *Smith*, 205 Ark. 604, 170 S. W. 2d 82. The Legislature has entrusted to the Commission the power to speak the final word in controversies of fact, just as a jury must assume that responsibility in suits at common law. It is immaterial that we might reach a different conclusion if we were permitted to try the case anew. That authority has

not been given to us." So here, while we might not agree with the results reached by the Commission were we permitted to try the case *de novo,* however, we have no such authority.

Appellant also contends that a certain hypothetical question propounded to Dr. J. N. Compton and Dr. Robert Watson omitted certain undisputed material and necessary facts. In other words, that it did not embrace all of the facts, was therefore improper and prejudicial to appellant's rights. We think this contention untenable.

One of the doctors who had treated Morris for his original injury, and who examined him immediately after his death, and who signed the death certificate, was Dr. McMillan, who testified: "Q. Is there anything in this medical history and from your observation of this man that would, in any way, connect up the injury he had on August 12, 1948, and his death on January 22, 1949? In other words, are you of the opinion that the injury in August had anything to do with his death in January of 1949? A. I am not. I think there is no connection. That is my personal opinion."

Dr. Fincher, who had examined Mr. Morris on September 1, 1948, and saw him thereafter while Morris was in the El Dorado hospital, made this statement: "OPINION: I have reviewed the clinical records kept on Mr. Morris and the diagnosis, treatment and findings of Dr. Gardner H. Landers noted thereon, together with my own examination of Mr. Claude Morris. It is my opinion, therefore, that there is nothing about the injury to his eye, the resulting infection or the treatment given that could have caused his subsequent heart failure and death." Dr. A. W. Norris, who had examined and treated Mr. Morris in August, 1948, for his eye injury, gave the following opinion: "I have since learned that Mr. Morris is now dead and that his death was apparently due to a heart attack. It is my opinion that the injury to the right eye of Mr. Morris did not cause, or in any way contribute to, the heart stoppage causing his death."

In view of the testimony of these three doctors, McMillan, Fincher and Norris, we hold that their testimony

alone constituted sufficient substantial evidence to support the findings of the Commission to the effect that Morris' death did not arise out of, or in the course of his employment, and was not caused by or in any way connected with his eye injury.

Leaving out all consideration on the point relating to the hypothetical question propounded to Dr. Watson and Dr. Compton and the opinions of other doctors, the testimony of Doctors McMillian, Fincher and Norris, as indicated, was sufficient substantial evidence to support the Commission's findings.

Affirmed.

MILLWEE, WARD and ROBINSON, JJ., dissent.